## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **LISA MASON** | ) | |
| **9404 Woodsong Court** | ) | |
| **Laurel, MD 20723** | ) | |
| | ) | **COMPLAINT** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **THE NATIONAL RAILROAD** | ) | |
| **PASSENGER CORPORATION** | ) | |
| **(d.b.a AMTRAK)** | ) | |
| **60 Massachusetts Ave, NE** | ) | |
| **Washington, DC 20002** | ) | |
| **Defendant,** | ) | |
| | ) | |
| **Serve:** | ) | |
| | ) | |
| **C T CORPORATION SYSTEM** | ) | |
| **1015 15th St. NW Suite 1000** | ) | |
| **Washington, DC 20005** | ) | |
| | ) | |
| | ) | |

_____)

## CIVIL COMPLAINT FOR EQUITABLE
## AND MONETARY RELIEF AND DEMAND FOR JURY

1.       This action arises out of Defendant National Railroad Passenger Corporation's (d.b.a. Amtrak) unlawful employment actions against Plaintiff Lisa Mason.  Amtrak discriminated against Mason in violation of the Equal Pay Act (EPA), 29 U.S.C. § 206(d), *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1402.11, *et seq.*

2.       From October 2000 to October 2013, Mason, who is an African-American woman, worked for Amtrak as a software developer and later a SAP Development Manager, receiving promotions and exemplary performance reviews.

3.      Despite her promotions, excellent performance, and long service, Amtrak paid Mason less than her male counterparts.

4.      In 2009, Amtrak hired Victor Marquez, a male, for a position with the same duties as Mason's position and with a similar but slightly different job title.

5.      Marquez's salary was $15,000 higher than Mason's, even though Mason had nine years of experience with Amtrak while Marquez had only two.

6.      This salary gap between Mason and Marquez continued until the end of Mason's employment.

7.      On or around August 15, 2013, Amtrak informed Mason that it would eliminate her position effective October 31, 2013.

8.      Amtrak did not eliminate the position of Marquez, a non-African-American male.

9.      Mason could only apply for other positions that were at much lower levels of responsibility and salary than her previous position.

10.     African-American and female employees have disproportionately faced elimination of their positions by Amtrak over the last several years.

11.     Amtrak failed to justly compensate Mason in violation of the EPA when it paid her less than it pays similarly situated male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

12.     Amtrak discriminated against Mason on the basis of her sex and race in violation of Title VII and the DCHRA, by eliminating her position on the basis of her sex and race.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action generally pursuant to 28 U.S.C. § 1331,

as it asserts a claim that arises under the constitution, laws, or treaties of the United States, and more specifically under the EPA, as incorporated into the Fair Labor Standards Act of June 25, 1938, Chapter 676, 52 Stat. 1069, 29 U.S.C. §§ 201-219, a law of the United States regulating interstate commerce; and under Title VII, 42 U.S.C. § 2000e, *et seq*.

14.     Venue is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because Amtrak conducts business and possesses real property in the District of Columbia.

## PARTIES

15.     Plaintiff Mason is a resident of Howard County, Maryland, and she is a proper plaintiff in this matter as she was an "employee" of Amtrak as that term is defined in 29 U.S.C. § 203(e), 42 U.S.C. § 2000e, *et seq.*, and D.C. Code § 2-1401.02, *et seq*.

16.     Defendant Amtrak is headquartered in the District of Columbia, with its corporate offices located at 60 Massachusetts Avenue, NE, Washington, DC 20002.  Amtrak is the national publicly-funded railway service, operated and managed as a for-profit corporation.  Amtrak is a proper defendant in this matter because it was Mason's "employer" as that term is defined in 29 U.S.C. § 203(e), 42 U.S.C. § 2000e, *et seq.*, and D.C. Code § 2-1401.02, *et seq*.

17.     Amtrak has gross revenue in excess of $500,000 per annum, is engaged in the production of goods for interstate commerce and uses and handles goods which have moved in interstate commerce, as such terms are defined in the EPA, employs ten (10) or more persons, and is an employer subject to the jurisdiction of the EPA, Title VII, and DCHRA.

## FACTUAL ALLEGATIONS

18.     Mason is an African-American woman who has worked in information technology and computing since she graduated from college in 1989.

19.     When Amtrak hired her in 2000, Mason already had ten years of experience as a

systems engineer and applications developer for various companies in Maryland and Virginia.

20.     In October 2000, Amtrak hiring manager Robert Estes offered Mason a position as a COBOL developer on IBM mainframes.

21.     Mason's starting salary at Amtrak was $78,000.

22.     Although Mason tried to negotiate a higher salary, Amtrak would not increase it, and Mason accepted the position at that salary.

23.     From the start of her employment with Amtrak, Mason suspected that she was being paid less than male employees who had the same position, and whose performance required equal skill, effort, and responsibility as her performance.

24.     After Estes left Amtrak, he confirmed Mason's suspicions by telling Mason that she was paid "at least $10,000 less" than the male developers who reported to him.

25.     Despite the disparity in pay, Mason consistently performed her work in exemplary fashion, and received excellent performance reviews over the years.

26.     For example, on a scale of 0 to 4 (with 2 as "competent," 3 as "strong," and 4 as "exceptional"), Mason received an overall score of 3.50 in 2008 on her performance review; a 3.37 in 2009; a 3.53 in 2010; and a 3.54 in 2011.

27.     Mason consistently received top ratings (4.0s) for "Analytic Skills," "Teamwork," and timely completion of major projects.

28.     Mason's overall performance ratings were among the highest overall ratings for any of Amtrak's software developers or managers.

29.     In October 2003, Mason joined Amtrak's SAP team as an ABAP Systems Developer, developing and writing specifications for custom programs for an SAP 4.0b implementation.

30.     Likewise, Mason developed and wrote specifications for the December 2006 implementation of SAP ECC 6.0.

31.     Amtrak typically paid SAP developers more than mainframe developers.

32.     Even though Mason's move to the SAP team should have been accompanied by salary increase, Amtrak did not increase Mason's salary.

33.     In or around June 2004, after an audit by outside consultant Deloitte Touche Tohmatsu showed an SAP upgrade project was deficient, Amtrak terminated all the employees on the SAP project, including Mason.

34.     However, Amtrak permitted Mason to reapply and return to the same position.

35.     Likewise, Amtrak rehired Mason's male colleagues to their prior positions on the SAP project.

36.     Mason was rehired at a lower rate of pay than her rehired male counterparts who held equivalent positions to Mason.

37.     Mason continued to work while receiving a lower salary than her male counterparts.

38.     In 2006, the then-Chief Information Officer, Steve Emanuel, and Mason's manager Denise Holland helped Mason lobby for an "equity adjustment" to increase her salary.

39.     In a memorandum dated September 18, 2006, Emanuel wrote that Mason was "exceptionally diligent" and her technical skills were "outstanding and equal [to] those of staff with twice as much SAP experience."

40.     But at that time, and despite the praise for Mason's performance, Amtrak was only paying Mason $87,200 per year, which was significantly less than her male counterparts who had equal or less longevity at Amtrak.

41.     In the fall of 2006, Mason had six years of service at Amtrak.

42.     Mason's male counterparts were John Welsh, who had four years of experience at Amtrak, and Howard Fluty, who had six years of experience at Amtrak.

43.     Amtrak paid Welsh $102,400 per year, and paid Fluty $95,000 per year.

44.     Emanuel urged Amtrak to increase Mason's salary by $10,400, to $97,600.

45.     In response, Amtrak gave Mason an equity increase of $8,800, $1,600 less than Emanuel suggested, resulting in an annual income for Mason of $96,000.

46.     Mason continued to perform exemplary work, and in January 2008, Holland appointed her to the Development Team Lead position for the SAP Team.

47.     Though this team lead position gave Mason more responsibility, Amtrak only gave her a standard raise of 3.5% and not a raise commensurate with her new work load and additional responsibility.

48.     In October 2008, Amtrak promoted Mason to Development Manager (ECC) of the SAP Team.

49.     Due to the promotion, Holland requested that Amtrak increase Mason's salary.

50.     Amtrak subsequently raised Mason't salary to $116,000.

**Accenture took over Amtrak's SAP development program.**

51.     In 2008, Amtrak contracted with Accenture PLC to initiate a Strategic Asset Management program (SAM).

52.     Amtrak's collaboration with Accenture was not successful – the SAM roll-out was done poorly, and Accenture began taking more and more responsibility away from Amtrak's native SAP team.

53.     In 2009, Amtrak hired Victor Marquez, a non-African-American male, for a full-

time position as a SAP Development Manager (non-ECC), responsible for supervising a team of five employees.

54.     Prior to this, Marquez had been a contractor with Amtrak for about two years.

55.     At the same time in 2009, Mason was working as a SAP Development Manager (ECC),  responsible for supervising a team of seven employees.

56.     Despite the fact that Mason had more seniority than Marquez and that their positions were essentially identical, Amtrak hired Marquez at a higher starting salary.

57.     Amtrak hired Marquez at a starting salary of $133,000 in 2009, while Mason's 2009 salary was $13,500 less, at only $119,500.

58.     Mason and Marquez had substantially similar titles and did identical work in SAP development and management of a team of developers.

59.     The only reason for the pay disparity is that Mason is female and Marquez is male.

60.     Mason had eight years of experience working for Amtrak, while Marquez had less than three.

61.     Additionally, Mason supervised more employees than Marquez did.

62.     The discriminatory pay for Mason was willful on the part of Amtrak, as Amtrak has knowledge of Mason and Holland's prior requests for equity increases to match male co-workers' pay.

63.     Mason and Marquez both continued to get annual raises proportional to their salary, meaning that their salary gap increased from 2009 to 2013.

64.     Marquez's salary at the time of Mason's termination was at least $16,000 greater than Mason's salary at termination of $132,428.98.

**Amtrak and Accenture instituted reductions-in-force.**

65.     Starting in 2009, Accenture began to take more responsibility away from Amtrak's native SAP team, and several reductions-in-force (RIFs) occurred at Amtrak.

66.     Amtrak eliminated positions in a way that disproportionately impacted African-American and female employees.

67.     For example, there were originally two male and two female directors in the SAP team, but a September 2012 RIF resulted in the elimination of the positions of both female directors, Cindy Barradale and Denise Holland, who is also African-American.

68.     Holland is an African American female.

69.     RIFs in September 2012 and August 2013 also eliminated the positions of Delando Cavanaugh, a male African-American business analyst, and of Robin Little, a female African-American IT employee.

70.     The share of the September 2012 layoffs fell disproportionately on the African-American and female IT employees.

71.     Around this time, Accenture personnel began treating Mason poorly, by failing to invite her to meetings, leaving her off of important emails, and terminating members of her team and replacing them with less qualified individuals.

72.     Mason was singled out for this negative treatment because Amtrak and Accenture wanted to force her to quit her job or make an excuse for eliminating her position.

73.     Amtrak targeted Mason for this negative treatment because Amtrak and Accenture wanted to erode her job performance to create an excuse for eliminating her position.

74.     Nevertheless, Mason continued to perform at a high level.

75.     Umit Shah, Mason's manager after November 2012, called her a "producer" and

reassured her that she did not need to worry about her job.

76.     In May 2013, Amtrak hired Deloitte to perform a workforce survey, in which employees would fill out an online skills assessment and then interview with a Deloitte representative.

77.     Just before the survey, Amtrak's Chief Information Officer Jason Molfetas asked Human Resources for a list of all IT employees with their ethnicities and ages included.

78.     Soon after the survey, on or around August 15, 2013, Amtrak informed Mason in writing that her position would be eliminated, effective on or around October 31, 2013.

79.     Amtrak provided no reason for this elimination other than "re-organization."

80.     Amtrak posted positions to which Mason could apply, but none were comparable to her current position as SAP Development Manager, and all required significant decreases in responsibilities and salary.

81.     Given no option other than to apply for a much lower position, Mason did not apply for any positions, and Amtrak abolished her position on October 31, 2013.

82.     Mason's actual termination date was November 14, 2013, and Amtrak paid her through that date.

83.     Of the six African-American IT employees working for Amtrak in 2009, only two remain at Amtrak.

84.     Amtrak eliminated the positions of the four other African-American IT employees.

85.     Since 2009, each RIF at Amtrak has disproportionately targeted African-American and female employees.

86.     Amtrak targeted Mason for elimination because of Mason's race and gender.

87.     On December 30, 2013, Mason timely filed a charge of sex and race

discrimination against Amtrak with the Equal Employment Opportunity Commission.

88.     On June 18, 2014, the EEOC's 180-day investigative period expired.

89.     As of June 18, 2014, Mason had exhausted her administrative remedies under

Title VII.

**COUNT I**
**EQUAL PAY ACT**
**29 U.S.C. § 206(d)**
**UNEQUAL PAY**

90.     Mason incorporates the allegations in the foregoing paragraphs as though alleged

herein.

91.     Mason is an "employee" as the term is defined at 29 U.S.C. § 203(e).

92.     Amtrak is an "employer" as the term is defined at 29 U.S.C. § 203(d).

93.     Amtrak discriminated against Mason on the basis of sex by compensating her at a

rate less than the rate at which it paid wages to similarly situated male employees, such as Victor

Marquez, for equal work on jobs with equal titles, the performance of which required equal skill,

effort, and responsibility, and which were performed under similar working conditions.

94.     Amtrak willfully and/or intentionally failed and/or refused to pay to Mason equal

wages as is required under the EPA.

95.     Amtrak's actions were taken with willful disregard for the rights of Mason under

the EPA.

96.     As a result of Amtrak's unlawful conduct, Mason suffered a loss of wages.

97.     Amtrak's stated and forthcoming reasons for Mason's differential pay are

pretextual.

98.     For violations of the EPA, 29 U.S.C. § 216(b) allows Mason to recover from Amtrak, in addition to any judgment awarded, an additional equal amount as liquidated damages as well as interest on the monies due and owing.

99.     29 U.S.C. § 216(b) further provides that Mason may receive, without limitation, employment, reinstatement, promotion, the costs of this action, as well as a reasonable attorneys' fee to be paid by Amtrak.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT**
**42 U.S.C. § 2000e, *et seq.***
**SEX DISCRIMINATION**

100.    Mason  incorporates the allegations in the foregoing paragraphs as though alleged herein.

101.    Mason is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

102.    Amtrak is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

103.    Amtrak violated 42 U.S.C § 2000e-2 by discriminating against Mason by terminating her because of her sex.

104.    Amtrak eliminated the positions of female employees, including Mason's position, based on sex, disproportionately targeting female employees for job elimination and subsequent termination over male employees.

105.    Amtrak's stated and forthcoming reasons for Mason's termination are pretextual.

106.    Mason has exhausted her administrative remedies.

107.    For Amtrak's unlawful discrimination against Mason, pursuant to 42 U.S.C. § 2000e et seq., Mason is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorney's fees to be paid by Amtrak, as well as her costs and any other legal and/or equitable relief that this

Court deems appropriate.

## COUNT III
## TITLE VII OF THE CIVIL RIGHTS ACT
### 42 U.S.C. § 2000e, *et seq.*
### RACE DISCRIMINATION

108.    Mason  incorporates the allegations in the foregoing paragraphs as though alleged herein.

109.    Mason is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

110.    Amtrak is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

111.    Amtrak violated 42 U.S.C § 2000e-2 by discriminating against Mason by terminating her because of her race.

112.    Amtrak eliminated the positions of African-American employees, including Mason's position, based on race, disproportionately targeting African-American employees for job elimination and subsequent termination over non-African-American employees.

113.    Amtrak's stated and forthcoming reasons for Mason's termination are pretextual.

114.    Mason has exhausted her administrative remedies.

115.    For Amtrak's unlawful discrimination against Mason, pursuant to 42 U.S.C. § 2000e *et seq.*, Mason is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorney's fees to be paid by Amtrak, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## COUNT IV
## D.C. HUMAN RIGHTS ACT
### D.C. Code § 2-1402, *et seq.*
### SEX DISCRIMINATION

116.    Mason incorporates the allegations in the foregoing paragraphs as though alleged herein.

117.    Mason is an "employee" as the term is defined at D.C. Code § 2-1401.02(9).

118.    Amtrak is an "employer" as the term is defined at D.C. Code § 2-1401.02(10).

119.    Under the DCHRA, it is unlawful for an employer to discharge or otherwise discriminate against any individual, with respect to her compensation, terms, conditions, or privileges of employment, wholly or partially for a discriminatory reason based upon sex.  D.C. Code § 2-1402.11(a).

120.    Amtrak violated D.C. Code § 2-1402.11, *et seq.*, by discriminating against Mason by terminating her wholly or partially because of her sex.

121.    Amtrak eliminated the positions of female employees, including Mason's position, based on sex, disproportionately targeting female employees for job elimination and subsequent termination over male employees.

122.    Mason was performing her job duties at a level that met or exceeded Amtrak's expectations at the time that Amtrak terminated her.

123.    Amtrak acted with malice and/or reckless indifference in discriminating against Mason because of her sex.

124.    For Amtrak's unlawful discrimination against Mason, pursuant to D.C. Code § 2-1403.13 *et seq.*, Mason is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorney's fees to be paid by Amtrak, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

### COUNT V
### D.C. HUMAN RIGHTS ACT
### D.C. Code § 2-1402, *et seq.*
### RACE DISCRIMINATION

125.    Mason incorporates the allegations in the foregoing paragraphs as though alleged

herein.

126.     Mason is an "employee" as the term is defined at D.C. Code § 2-1401.02(9).

127.     Amtrak is an "employer" as the term is defined at D.C. Code § 2-1401.02(10).

128.     Under the DCHRA, it is unlawful for an employer to discharge or otherwise discriminate against any individual, with respect to her compensation, terms, conditions, or privileges of employment, wholly or partially for a discriminatory reason based upon race.  D.C. Code § 2-1402.11(a).

129.     Amtrak violated D.C. Code § 2-1402.11, *et seq.*, by discriminating against Mason by terminating her wholly or partially because of her race.

130.     Amtrak eliminated the positions of African-American employees, including Mason's position, based on race, disproportionately targeting African-American employees for job elimination and subsequent termination over non-African-American employees.

131.     Mason was performing her job duties at a level that met or exceeded Amtrak's expectations at the time that Amtrak terminated her.

132.     Amtrak acted with malice and/or reckless indifference in discriminating against Mason because of her race.

133.     For Amtrak's unlawful discrimination against Mason, pursuant to D.C. Code § 2-1403.13 *et seq.*, Mason is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorney's fees to be paid by Amtrak, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mason prays this Honorable Court for the following relief:

A.       Judgment against Defendant Amtrak in an amount of any wages, salary,

employment benefits, or other compensation denied or lost to Plaintiff, including economic damages, liquidated damages, compensatory damages, and punitive damages to be determined at trial;

     B.     Re-employment, reinstatement, promotion, front pay, or other equitable relief;

     C.     Pre-judgment interest;

     D.     Interest due on unpaid wages;

     E.     A reasonable attorney's fee and the costs of this action;

     F.     Reasonable expert witness fees; and

     G.     Any other relief this Honorable Court deems just and proper to award.

**JURY DEMAND**

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted,

John T. Harrington, DC Bar # 987659
R. Scott Oswald, DC Bar # 458859
*Counsel for Plaintiff*
The Employment Law Group, P.C.
888 17th Street, N.W., 9th floor
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
tharrington@employmentlawgroup.com
soswald@employmentlawgroup.com

Dated:  October 22, 2014

Plaintiff's Address:

9404 Woodsong Court
Laurel, MD 20723